1

2

3

4

5

6

7

8             **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ROBERT GEORGE BRIGANCE,              No. CIV S-03-0963-GEB-CMK-P

12                  Petitioner,

13          vs.                          FINDINGS AND RECOMMENDATIONS

14   MIKE KNOWLES, et al.,

15                  Respondents.

16   _____/

17                 Petitioner, a state prisoner proceeding with counsel, brings this petition for a writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition

19   for a writ of habeas corpus (Doc. 1).  Respondents filed an answer (Doc. 9) and petitioner filed a

20   reply (Doc. 15).  The parties have also submitted supplemental briefing (Docs. 21 & 22)

21   addressing the application of Crawford v. Washington, 541 U.S. 36 (2004), to this case.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

# I. BACKGROUND

A.      **Facts**

The state court recited the facts of the case, with which the parties are certainly familiar, in a lengthy 20-page discussion, and petitioner has not offered any clear and convincing evidence to rebut the presumption that those facts are correct.[1]  The state court's statement of facts is set forth verbatim in respondents' answer.  Therefore, the court will not repeat all the facts here.  Rather, the court will summarize the facts of the case.[2]

The victim – Mary Kay Whitman – moved into the Woodside condominium complex in late November to early December 1998.  Petitioner lived in the same complex, in a building across from Whitman's unit.  Whitman and petitioner became acquainted and formed an intimate relationship during December 1998.  Whitman told friends she was very pleased.  But, by the middle of December 1998, Whitman expressed to family and friends that things were not all she had hoped.

On December 28, 1998, Whitman and petitioner had dinner in Whitman's unit.  Whitman and petitioner also spent the next day and evening together.  Between 12:30 a.m. and 1:00 a.m. on the morning of December 30th, Whitman's downstairs neighbor was awakened by the sound of bumps and thumps at irregular intervals coming from the unit above.  The neighbor testified that he also heard the sliding door to the unit above opening and closing several times.  The neighbor fell back asleep at 1:30 a.m. without hearing anything else.

/ / /

/ / /

---

[1]      Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

[2]      The summary is derived from the statement of facts contained in petitioner's opening brief on direct appeal in state court.

At 3:08 a.m., petitioner called 911 to report finding Whitman apparently dead on the bathroom floor. He followed CPR instructions to no avail. When fist responders arrived at 3:14 a.m., petitioner was on the balcony of Whitman's unit. The first responders confirmed that Whitman was dead. Petitioner explained to the complex security guard, who had arrived at the scene at 3:20 a.m., that he had been asleep on the couch in the living room when he awoke and noticed Whitman missing. Petitioner stated he searched and found Whitman's body in the bathroom. None of the people responding to the scene saw anything that led them to conclude there had been foul play.

An autopsy, however, revealed that Whitman died of asphyxiation. The coroner observed a ligature mark on Whitman's neck that appeared to have resulted from strangulation by a soft cloth object. Petitioner denied killing Whitman, saying that he did not know what had happened.

B.   **Procedural History**

Petitioner was convicted of first degree murder, in violation of California Penal Code §§ 187 and 189, and was sentenced to 25 years to life. Petitioner filed a direct appeal with the California Court of Appeal, which affirmed in a reasoned opinion issued on December 21, 2001. The Court of Appeal summarily denied rehearing. The California Supreme Court denied review without comment or citation on March 27, 2002.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. For instance, when the state court reaches a decision on the merits, but provides no reasoning to support its conclusion, a federal habeas court

1   independently reviews the record to determine whether the state court clearly erred in its

2   application of Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

3   Similarly, when it is clear that a state court has not reached the merits of a petitioner's claim,

4   because it was not raised in state court or because the court denied it on procedural grounds, the

5   AEDPA deference scheme does not apply and a federal habeas court must review the claim de

6   novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not

7   apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation

8   rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state

9   court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because

10  evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v.

11  Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued

12  a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state

13  court does not reach the merits of a claim,  "concerns about comity and federalism . . . do not

14  exist."  Pirtle, 313 F. 3d at 1167.

15          Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d)

16  is not available for any claim decided on the merits in state court proceedings unless the state

17  court's adjudication of the claim:

18                  (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as determined
19                  by the Supreme Court of the United States; or

20                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the State
21                  court proceeding.

22  28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v.

23  Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

24  / / /

25  / / /

26  / / /

1    Under § 2254(d), federal habeas relief is available where the state court's decision

2 is "contrary to" or represents an "unreasonable application of" clearly established law.  In

3 Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the

4 Court), the United States Supreme Court explained these different standards.  A state court

5 decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme

6 Court on the same question of law, or if the state court decides the case differently than the

7 Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state court

8 decision is also "contrary to" established law if it applies a rule which contradicts the governing

9 law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate that

10 Supreme Court precedent requires a contrary outcome because the state court applied the wrong

11 legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court cases

12 to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at 406.

13 If a state court decision is "contrary to" clearly established law, it is reviewed to determine first

14 whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th

15 Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

16 habeas relief is warranted.  See id.  If the error was not structural, the final question is whether

17 the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

18    A state court decision is reviewed under the far more deferential "unreasonable

19 application of" standard where it identifies the correct legal rule from Supreme Court cases, but

20 unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

21 123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

22 suggested that federal habeas relief may be available under this standard where the state court

23 either unreasonably extends a legal principle to a new context where it should not apply, or

24 unreasonably refuses to extend that principle to a new context where it should apply.  See

25 Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

26 decision is not an "unreasonable application of" controlling law simply because it is an erroneous

1  or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.

2  1166, 1175 (2003).  An "unreasonable application of" controlling law cannot be found even

3  where the federal habeas court concludes that the state court decision is clearly erroneous.  See

4  Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper

5  deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As

6  with state court decisions which are "contrary to" established federal law, where a state court

7  decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

8  unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

### III.  DISCUSSION

Petitioner raises one claim in the instant petition.  Specifically, petitioner asserts that the trial court violated his Confrontation Clause rights by admitting evidence of out-of-court statements made by the victim, Mary Kay Whitman.

**A.**    **The Challenged Hearsay**

As outlined in the petition, petitioner identifies the following hearsay statements:

> Whitman told a friend and co-worker of hers that she met Brigance on the first day she moved into her condominium.  Brigance helped Whitman get a couch into her upper level condominium, and afterward, Brigance and Whitman had a drink together.  A friend and co-worker of Whitman's testified at Brigance's trial that Whitman was "terribly excited" about meeting Brigance.

> Consistent with the foregoing testimony, a number of Whitman's family members, friends, and co-workers, who were called as witnesses by the prosecution, testified that Whitman became involved in an intimate, dating relationship with Brigance, and that she was happy with the relationship in early December.  Indeed, with regard to Whitman's attitude about the outset of the relationship, one of Whitman's friends testified: "I could tell by looking at her that she seemed to be having fun."

> However, according to these prosecution witnesses, Whitman made statements to them indicating that the relationship between her and Brigance began to sour.  In this regard, one of Whitman's friends testified:

> When she first told me about the guy she was seeing, she said that she was having fun, and she wasn't interested in anything serious, and I

told her she should have a good time, [and] she expressed to me that he was coming on very strong and he was also calling her quite frequently at work, numerous calls during the day. [¶] And I think at that point I had made a comment to her about that at least he was being assertive, and she said well, I think it is a little overwhelming to me.

That same friend testified that she saw Whitman on December 28, 1998, and that on that date Whitman expressed that "[s]he was feeling like [Brigance] was coming on very, very strong and she was feeling uncomfortable about it, and she just wanted to go home that evening and draw the drapes so he would think that she wasn't home."

Whitman's aunt testified about what Whitman told her about the relationship. According to the aunt, Whitman had been disappointed in Brigance on two occasions, one when Whitman had wanted to go out to dinner with him, and on another occasion when Whitman had wanted to go out to a movie with Brigance. On both occasions, however, Brigance had wanted to stay in rather than go out. In the middle of December of 1998, Whitman told her aunt that she was not seeing Brigance very often and that she did not think things were going to work out between then. The aunt testified that she told Whitman: "[G]et rid of him, he is a cheap, free-loading asshole." According to the aunt, Whitman responded with "a good hearty laugh . . ."

Two of the prosecution witnesses, Whitman's son and her aunt, testified that Whitman told them that Brigance had children from previous marriages, and that he had no contact with his children. According to these witnesses, this caused Whitman to look upon Brigance with disfavor.

Whitman's son, Ed Whitman, testified that when she told him about Brigance, he asked whether she was interested in Brigance. Whitman said, "not really." Ed Whitman also testified that he was with his mother at her condominium on Christmas Eve, and that he asked her whether she wanted him to meet Brigance. Whitman said no.

**B.    The New Rule of Law**

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. See U.S. Constitution, Amendment VI. Prior to the Supreme Court's decision in Crawford v. Washington, the admission of hearsay evidence did not violate the Confrontation Clause where the hearsay fell within a firmly rooted exception to the hearsay rule and otherwise contained "particularized guarantees of trustworthiness." Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Ohio v. Roberts, 448 U.S. 56, 66 (1980). In Crawford, however, the Supreme Court announced a new rule: Out-of-court statements by witnesses not

7

appearing at trial that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had a chance to cross-examine, regardless of whether such statements are deemed reliable by the trial court.  See  541 U.S. at 51.

While the Supreme Court in Crawford "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Court provided some guidance. 541 U.S. at 68.  The Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51; see also Davis v. Washington, ___U.S.___, 126 S.Ct. 2266 (2006) (holding that law enforcement interrogations directed at establishing the facts of a past crime or in order to identify the perpetrator are testimonial).

Although the Crawford rule was not clearly established law at the time that the criminal proceedings in petitioner's case took place, the Ninth Circuit held in Bockting v. Bayer, that the Crawford rule should be applied retroactively on collateral review.  See 399 F.3d 1010, as amended on denial of rehearing by 408 F.3d 1127 (9th Cir. 2005).  Accordingly, the court recognizes that, under Bockting, extending the holding of Crawford to the instant case does not violate the non-retroactivity principle set forth in Teague v. Lane, 489 U.S. 288 (1989).[3]

**C.  Analysis of the Merits**

With respect to the appropriate standard of review under AEDPA, the court observes that the state courts appear not to have addressed the federal nature of petitioner's

---

[3]    In Teague v. Lane, the Supreme Court held that new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced unless they fall within two exceptions to the general rule.  See 489 U.S. 288 (1989).  The two exceptions are if the new constitutional rule of criminal procedure would "place certain kinds of primary, private individual conduct beyond the power of criminal-law making authority..." or "require the observance of 'those procedures that...are 'implicit in the concept of ordered liberty.'"  Id. at 307; see also, Sawyer v. Smith, 497 U.S. 227, 242 (1990) (stating that rules are properly considered retroactive when they alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding).  In Bockting, the Ninth Circuit held that Crawford applied retroactively because it altered the understanding of the bedrock procedural elements essential to the fairness of a proceeding. See 399 F.3d at 1019-20.

1   claim.[4]  Therefore, there is no state court opinion to review.  Moreover, even if the state court had

2   considered the federal aspect of the claim, the Supreme Court announced the new rule of

3   Crawford after the state court issued its last reasoned opinion.  Thus, it would not have been

4   possible for the state court to have applied the correct rule such that the more deferential

5   "unreasonable application of" standard of review would apply.  As such, the court will consider

6   petitioner's claim de novo.

7          Under this standard of review, the only question for this court is whether, under

8   Crawford, the admission of the challenged hearsay resulted in a violation of petitioner's

9   Confrontation Clause rights.  Because a Confrontation Clause violation is a structural error, see

10  Bockting, 399 F.3d at 1019-20, harmless error analysis is not applicable, see e.g. Benn, 293 F.3d

11  at 1052 n.6.

12         Under Crawford, a Confrontation Clause problem only arises when out-of-court

13  statements which are testimonial are admitted.  Therefore, if the out-of-court statements are not

14  testimonial in nature, the Confrontation Clause is not offended.  As to what constitutes

15  "testimonial" out-of-court statements, the Supreme Court observed that "[a]n accuser who makes

16  a formal statement to government officers bears testimony in a sense that a person who makes a

17  casual remark to an acquaintance does not."  Crawford, 541 U.S. at 51; see also Davis,

18  ___U.S.___, 126 S.Ct. 2266.

19         In this case, petitioner challenges Whitman's out-of-court statements to family

20  and friends concerning her relationship with him.  None of the challenged statements were made

21  to law enforcement or investigative personnel.  Therefore, the hearsay in this case is more akin to

22  a casual remark to an acquaintance than it is a formal statement to government officers.  See id.

23

24          [4]       There is a dispute as to whether petitioner adequately exhausted his claim by fairly
    presenting the federal aspect of the claim to the highest state court.  If the court determines that
    petitioner's claim fails on the merits, there is no need to address exhaustion because this court
25  may deny an unexhausted claim on the merits.  See 28 U.S.C. § 2254(b)(2).  If, however, the
    court determines that petitioner's claim has merit and that habeas relief is warranted, the court
26  will then consider whether the claim is exhausted such that the court may grant relief.

As such, it is not testimonial.  Because the challenged hearsay is not testimonial, there can be no

Confrontation Clause violation and petitioner's claim fails on the merits.

**D.**     **Exhaustion**

Because the court concludes that petitioner is not entitled to relief on the merits of

his claim, it is unnecessary to address whether the claim is exhausted.  <u>See</u> 28 U.S.C.

§ 2254(b)(2).


**IV.  CONCLUSION**

Based on the foregoing, the undersigned recommends that petitioner's petition for

a writ of habeas corpus be denied and that the Clerk of the Court enter judgment and close this

file.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

after being served with these findings and recommendations, any party may file written

objections with the court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."  Failure to file objections within the specified time may waive

the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


DATED:   August 30, 2006.


CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE